# UNITED STATES DISTRICT COURT
# DISTRICT OF MAINE

| | | |
|---|---|---|
| CHRISTOPHER HEWES, | ) | |
| | ) | |
| Plaintiff | ) | |
| | ) | |
| v. | ) | No. 1:10-cv-513-JAW |
| | ) | |
| MICHAEL J. ASTRUE, | ) | |
| Commissioner of Social Security, | ) | |
| | ) | |
| Defendant | ) | |

## REPORT AND RECOMMENDED DECISION[1]

This Social Security Disability ("SSD") and Supplemental Security Income ("SSI") appeal raises the question of whether the commissioner supportably found the plaintiff capable of performing work existing in significant numbers in the national economy. The plaintiff seeks reversal and remand on three bases: that the administrative law judge (i) erred at Step 3 in failing to find that his severe cognitive impairment met or medically equaled the criteria of Listing 12.05C, (ii) arrived at a residual functional capacity ("RFC") determination unsupported in several enumerated respects by substantial evidence, and (iii) improperly relied at Step 5 on vocational expert testimony elicited in response to a hypothetical question incorporating the flawed RFC finding. *See* Plaintiff's Itemized Statement of Error ("Statement of Errors") (Docket No. 13) at 9-21. I recommend that the decision of the commissioner be affirmed.

---

[1] This action is properly brought under 42 U.S.C. §§ 405(g) and 1383(c)(3). The commissioner has admitted that the plaintiff has exhausted his administrative remedies. The case is presented as a request for judicial review by this court pursuant to Local Rule 16.3(a)(2)(A), which requires the plaintiff to file an itemized statement of the specific errors upon which he seeks reversal of the commissioner's decision and to complete and file a fact sheet available at the Clerk's Office. Oral argument was held before me on September 15, 2011, pursuant to Local Rule 16.3(a)(2)(C), requiring the parties to set forth at oral argument their respective positions with citations to relevant statutes, regulations, case authority, and page references to the administrative record.

Pursuant to the commissioner's sequential evaluation process, 20 C.F.R. § 405.101 (incorporating 20 C.F.R. §§ 404.1520, 416.920); *Goodermote v. Secretary of Health & Human Servs.*, 690 F.2d 5, 6 (1st Cir. 1982), the administrative law judge found, in relevant part, that the plaintiff had severe impairments of mild to moderate degenerative changes of the lumbar spine and left knee, borderline intellectual functioning, depression, and anxiety, Finding 3, Record at 9; that he did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in Appendix 1 to Subpart P, 20 C.F.R. § 404 (the "Listings"), Finding 4, *id*. at 10; that he retained the RFC to perform medium work as defined in 20 C.F.R. §§ 404.1567(c) and 416.967(c), except that he could understand, remember, and carry out basic one- to three-step instructions throughout a normal workday and workweek with normal breaks on a sustained basis, could not tolerate interaction with the general public, and needed to avoid crowds of more than 100 people, Finding 5, *id*. at 11; that, considering his age (27 years old, defined as a younger individual, on the alleged disability onset date), education (limited), work experience (transferability of job skills immaterial), and RFC, there were jobs existing in significant numbers in the national economy that he could perform, Findings 7-10, *id*. at 15; and that he, therefore, was not disabled from August 28, 2002, his alleged disability onset date, through August 23, 2010, the date of the decision, Finding 11, *id*. at 16.[2] The Decision Review Board selected the decision for review but failed to act within 90 days, *id*. at 1-3, making the

---

[2] The plaintiff was insured for purposes of SSD benefits through March 31, 2007. *See* Finding 1, Record at 9. Therefore, to obtain SSD benefits, he was obliged to demonstrate that he was disabled on or before that date. *See Mueller v. Astrue*, 561 F.3d 837, 840 (8th Cir. 2009).

decision the final determination of the commissioner, 20 C.F.R. § 405.420(a)(2); *Dupuis v. Secretary of Health & Human Servs.*, 869 F.2d 622, 623 (1st Cir. 1989).

The standard of review of the commissioner's decision is whether the determination made is supported by substantial evidence. 42 U.S.C. §§ 405(g), 1383(c)(3); *Manso-Pizarro v. Secretary of Health & Human Servs.*, 76 F.3d 15, 16 (1st Cir. 1996). In other words, the determination must be supported by such relevant evidence as a reasonable mind might accept as adequate to support the conclusion drawn. *Richardson v. Perales,* 402 U.S. 389, 401 (1971); *Rodriguez v. Secretary of Health & Human Servs.*, 647 F.2d 218, 222 (1st Cir. 1981).

The administrative law judge reached Step 5 of the sequential evaluation process, at which stage the burden of proof shifts to the commissioner to show that a claimant can perform work other than his past relevant work. 20 C.F.R. § 405.101 (incorporating 20 C.F.R. §§ 404.1520(g), 416.920(g)); *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987); *Goodermote*, 690 F.2d at 7. The record must contain substantial evidence in support of the commissioner's findings regarding the plaintiff's RFC to perform such other work. *Rosado v. Secretary of Health & Human Servs.*, 807 F.2d 292, 294 (1st Cir. 1986).

The plaintiff's statement of errors also implicates Steps 2 and 3 of the sequential evaluation process. Although a claimant bears the burden of proof at Step 2, it is a *de minimis* burden, designed to do no more than screen out groundless claims. *McDonald v. Secretary of Health & Human Servs.*, 795 F.2d 1118, 1124 (1st Cir. 1986). When a claimant produces evidence of an impairment, the commissioner may make a determination of non-disability at Step 2 only when the medical evidence "establishes only a slight abnormality or [a] combination of slight abnormalities which would have no more than a minimal effect on an individual's

ability to work even if the individual's age, education, or work experience were specifically considered." *Id.* (quoting Social Security Ruling 85-28).

At Step 3, a claimant bears the burden of proving that his or her impairment or combination of impairments meets or equals a listing. 20 C.F.R. § 405.101 (incorporating 20 C.F.R. §§ 404.1520(d), 416.920(d)); *Dudley v. Secretary of Health & Human Servs.*, 816 F.2d 792, 793 (1st Cir. 1987). To meet a listing, the claimant's impairment(s) must satisfy all criteria of that listing, including required objective medical findings. 20 C.F.R. § 405.101 (incorporating 20 C.F.R. §§ 404.1525(c)(3), 416.925(c)(3)). To equal a listing, the claimant's impairment(s) must be "at least equal in severity and duration to the criteria of any listed impairment." 20 C.F.R. § 405.101 (incorporating 20 C.F.R. §§ 404.1526(a), 416.926(a)).

## I. Discussion

### A. Listing 12.05C

Listing 12.05 provides, in relevant part:

> 12.05 *Mental Retardation*: Mental retardation refers to significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period: *i.e.*, the evidence demonstrates or supports onset of the impairment before age 22.
>
> The required level of severity for this disorder is met when the requirements in A, B, C, or D are satisfied.
>
> \*\*\*
>
> C. A valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation of function[.]

Listing 12.05.

The administrative law judge found that the plaintiff's cognitive impairment did not meet Listing 12.05C because, although he attained a performance IQ score of 70 on a WAIS-III test

administered by Donna Gates, Ph.D., in April 2007, the evidence did not show that he had significant cognitive impairment and adaptive deficits prior to age 22. *See* Record at 11. At the plaintiff's hearing, the administrative law judge further explained that she considered the plaintiff to have "adapted quite well to living as a grown-up who is not mentally retarded[,]" given that he was able to take and pass a written driver's license test, maintain a home, and take care of two children who were autistic and had special needs. *See id*. at 29-31. She further noted that, although the plaintiff had difficulty with reading and writing, his high school record did not document that he was in special education. *See id*. at 29-30.

At oral argument, the plaintiff's counsel acknowledged that, subsequent to the drafting of the instant statement of errors, this court issued a decision overturning caselaw on which he had partially relied that construed the meaning of the so-called "capsule definition" of Listing 12.05. *See Libby v. Astrue*, No. 2:10-cv-292-JAW, 2011 WL 2940738 (D. Me. July 19, 2011) (rec. dec., aff'd Aug. 24, 2011). However, he stated that he continued to press his challenge to the administrative law judge's Listing 12.05C determination, citing the post-*Libby* case of *Richardson v. Social Sec. Admin. Comm'r*, No. 1:10-cv-00313-JAW, 2011 WL 3273140 (D. Me. July 29, 2011) (rec. dec., aff'd Aug. 18, 2011), for the proposition that, even under this court's new interpretation of the capsule definition, the administrative law judge's finding is unsupported by substantial evidence.[3]

The capsule definition is the first paragraph of Listing 12.05, which provides:

> Mental retardation refers to significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period: *i.e.*, the evidence demonstrates or supports onset of the impairment before age 22.

---

[3] At oral argument, the plaintiff's counsel correctly observed that, despite having filed his client's statement of errors prior to the issuance of *Libby*, he articulated a challenge to the administrative law judge's finding of lack of a showing of adaptive deficits manifested prior to age 22. *See* Statement of Errors at 11-13.

Listing 12.05C. *Libby* overturned prior caselaw of this court holding that, to satisfy the capsule definition, a claimant need only produce evidence of a qualifying IQ score, which is presumed to have been constant through his or her life absent evidence to the contrary. *See Libby*, 2011 WL 2940738, at *1, *8-*9. The *Libby* court held that the capsule definition requires a separate showing of deficits in adaptive functioning, observing that the focus of the inquiry need not be exclusively on the existence of such deficits prior to age 22 and that an administrative law judge properly can take into account evidence of current adaptive functioning that is inconsistent with a finding of mental retardation. *See id*. at *9-*10.

The *Libby* court upheld an administrative law judge's finding that a claimant had not made a showing sufficient to meet the capsule definition in circumstances in which the claimant had obtained a driver's license, drove regularly, was able to perform household activities of daily living such as cooking, cleaning, helping to take care of her disabled husband, and occasionally babysitting her grandchildren, engaged in leisure/social activities, could read a shopping list and write most of a shopping list, could count change, handle a savings account, and use a checkbook/money order, took care of pets, and was noted by a consulting examiner not to have difficulty understanding or following instructions and to show good persistence and concentration. *See id*. at *11-*12. The record contained conflicting expert evidence as to whether the claimant did or did not meet Listing 12.05C and whether she carried a diagnosis of borderline intellectual functioning or mental retardation. *See id*. at *11. In addition, there was evidence that the claimant was in special education in school, attended school only through the eighth grade, tried but failed to obtain a GED, was told she was reading at a fourth-grade level, got lost when she tried to take buses, was illiterate with a computer, and had difficulty running a cash register at work. *See id*. at *12. The court held that while the evidence did not compel a

conclusion that the claimant failed to meet the capsule definition of Listing 12.05C, it supported it – a circumstance in which the court must refrain from substituting its judgment from that of the administrative law judge. *See id.*

In *Richardson*, by contrast, the court deemed an administrative law judge's finding that a claimant had not met the capsule definition unsupported by substantial evidence in circumstances in which, despite the administrative law judge's observations that the claimant lived independently with her husband and child, drove, cared for her daughter, successfully completed adult education classes toward her GED, made simple meals, did laundry, and volunteered and ran errands for a soup kitchen, the consulting experts who rendered opinions as to whether the claimant met Listing 12.05C did not have the benefit of important evidence in the form of childhood IQ testing, records related to a childhood brain injury, or later testing revealing scores in the mild mental retardation range. *See Richardson*, 2011 WL 3273140, at *4, *8. Th*e Richardson* court articulated an "additional concern related to the Judge's *brevis* discussion of the mental retardation listing[,]" given that she "summarily found that deficits in adaptive functioning were not demonstrated based on the presence of a subset of relative adaptive abilities[,]" *id*. at *9, as well as a concern that, rather than discussing whether the claimant had a qualifying IQ score, the administrative law judge relied on a characterization of her IQ scores as "borderline[,]" *see id*. at *10. The court observed: "The existence or nonexistence of a 'diagnosis' of mental retardation is not an element of the listing analysis." *Id*.

At oral argument, counsel for the plaintiff contended that this case is more like *Richardson* than *Libby*, given the similar conclusory nature of the discussion of adaptive functioning and inadequate consideration of evidence weighing in favor of a finding of deficits in such functioning, including the plaintiff's testimony that he was in special education in school,

7

the fact that he left school after the ninth grade, assertedly without learning to read or write effectively, and the fact that he had worked only in heavy jobs consistent with his low IQ. Counsel for the commissioner argued that the case is more like *Libby*, in which, despite the existence of conflicting evidence, there was substantial evidence supporting the administrative law judge's capsule definition finding.

Counsel for the commissioner has the better argument. While the administrative law judge's Step 3 discussion is conclusory, *see* Record at 11, she elaborated on her assessment of the plaintiff's adaptive functioning at his hearing, *see id*. at 29-31, and in the Step 4 section of her discussion, *see id*. at 12-13. As counsel for the commissioner argued, the administrative law judge supportably found that the plaintiff engaged in activities indicative of a high degree of independent functional ability, including caring for two young autistic children, which by the plaintiff's own report was a "lot of work[,]" *id*. at 290, obtaining his driver's license by written examination and driving, *see id*., cooking, *see id*. at 40, taking his daughters ice fishing, *see id*. at 42-43, using the internet, *see id*. at 41, and managing a number of other household responsibilities, *see id*. at 290. At hearing, the plaintiff's counsel admitted that his client's high school transcript does not corroborate that he was in special education. *See id*. at 29; *see also id*. at 271.

Moreover, none of the three Disability Determination Services ("DDS") nonexamining mental health consultants who completed Psychiatric Review Technique Forms ("PRTFs") in this case found that the plaintiff's cognitive impairment met or equaled Listing 12.05C. *See id*. at 309 (PRTF dated April 30, 2007, by Brenda Sawyer, Ph.D.), 491 (PRTF dated December 10, 2008, by Lewis F. Lester, Ph.D.), 522 (PRTF dated April 17, 2009, by David R. Houston, Ph.D.). The plaintiff does not contend, as did the claimant in *Richardson*, that these experts did not have

the benefit of review of material information. Moreover, in this case, unlike in *Richardson*, the administrative law judge acknowledged that the plaintiff attained a qualifying IQ score of 70. *See id*. at 11. She based her decision on his failure to "show that he had significant cognitive impairment and adaptive deficits prior to age 22." *Id*. at 11. That conclusion was supported by substantial evidence.

The plaintiff's challenge to the Listing 12.05C finding hence falls short.

## B. RFC Determination

### 1. Challenge to Finding of Capacity To Perform Medium Work

The administrative law judge found the plaintiff capable of performing medium exertional level work, with mental but not physical nonexertional limitations. *See* Finding 5, Record at 11.[4] "Medium work involves lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds." 20 C.F.R. §§ 404.1567(c), 416.967(c). By contrast, "[l]ight work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds." *Id*. §§ 404.1567(b), 416.967(b).

The plaintiff contends that, in making her physical RFC finding, the administrative law judge rejected all expert medical RFC opinions of record, instead impermissibly substituting her lay judgment based on the raw medical evidence. *See* Statement of Errors at 13-16. He observes that the administrative law judge:

---

[4] "Exertional capacity addresses an individual's limitations and restrictions of physical strength and defines the individual's remaining ability to perform each of seven strength demands: Sitting, standing, walking, lifting, carrying, pushing, and pulling." Social Security Ruling 96-9p, reprinted in *West's Social Security Reporting Service* Rulings 1983-1991 (Supp. 2011) ("SSR 96-9p"), at 156. "Nonexertional capacity considers any work-related limitations and restrictions that are not exertional." *Id*. "Therefore, a nonexertional limitation is an impairment-caused limitation affecting such capacities as mental abilities, vision, hearing, speech, climbing, balancing, stooping, kneeling, crouching, crawling, reaching, handling, fingering, and feeling." *Id*.

9

1. Expressly gave "no weight" to the opinion of DDS nonexamining consultant Donald Trumbull, M.D., who found no severe physical impairment, *see id*. at 15; Record at 478-85;[5]

2. Purported to give "some weight" to the RFC opinion of DDS nonexamining consultant Robert Hayes, D.O., but rejected portions of the Hayes opinion limiting him to light lifting/carrying capacity and assessing nonexertional postural and manipulative limitations and a need to avoid uneven work surfaces, *see* Statement of Errors at 14; Record at 14-15, 297-304; and

3. Gave "great weight" to the report of DDS examining consultant Edward J. Harshman, [M.D.], and took into account the report of DDS examining consultant Bruce Trembly, M.D., although neither consultant made specific RFC findings or expressed an opinion that the plaintiff was capable of medium exertional level work, *see* Statement of Errors at 14-15; Record at 14-15, 295-96, 505-06.

At oral argument, counsel for the commissioner conceded that the administrative law judge erred in finding a capacity for medium work, which is unsupported by any medical expert evidence of record. However, he contended that the error was harmless because the administrative law judge found the plaintiff capable of performing a light job, that of bakery worker, based on vocational expert testimony predicated on a hypothetical question that included Dr. Hayes' assessed restrictions.

I agree. In response to a hypothetical question that included all but one of Dr. Hayes' assessed restrictions, the need to avoid uneven surfaces, the vocational expert identified the job of bakery worker, conveyor line, Dictionary of Occupational Titles (U.S. Dep't of Labor, 4th ed.

---

[5] The administrative law judge also expressly gave no weight to the opinion of a second DDS nonexamining consultant who found no severe physical impairment, Richard T. Chamberlin, M.D. *See* Record at 15, 508-16.

rev. 1991) ("DOT") § 524.687-022, a light occupation with approximately 1,152 jobs in Maine and 216,533 in the nation. *Compare* Record at 58-59 (colloquy with vocational expert) *with id*. at 297-301 (Hayes RFC opinion); *see also id*. at 16.[6]

The plaintiff does not argue, and the DOT does not indicate, that a need to avoid uneven surfaces would affect the performance of the bakery worker job. *See* DOT § 524.687-022. Nor does the plaintiff argue that the job exists in insufficient numbers in the national economy to meet the commissioner's Step 5 burden. *See generally* Statement of Errors. There is thus no reversible error.[7]

### 2. Challenge to Obesity Finding

The administrative law judge found the plaintiff's obesity nonsevere, stating that there was no evidence documenting functional limitations arising specifically from that condition. *See* Record at 9-10. The plaintiff argues that, in so finding, she erred, having ignored (i) the statement of Dr. McLam that his obesity was "[l]ikely partially a source of his chronic pain" and

---

[6] The vocational expert identified a second job, brick and tile burner, DOT § 573.685-038, a light occupation with approximately 20 jobs in Maine and 1,981 in the nation, in response to the hypothetical question incorporating Dr. Hayes' restrictions. *See* Record at 58-59. The administrative law judge relied on that job, as well, in support of her Step 5 finding, *see id*. at 16. However, counsel for the commissioner stated at oral argument that the commissioner does not rely on that job because it entails frequent climbing, which conflicts with the limitation on climbing set forth by Dr. Hayes.

[7] Although, in his statement of errors, the plaintiff faulted the administrative law judge for ignoring certain restrictions found by Dr. Hayes, *see* Statement of Errors at 13-16, his counsel suggested for the first time at oral argument that the Hayes RFC opinion could not stand as substantial evidence of the plaintiff's RFC because (i) Dr. Hayes did not have the benefit of a March 2010 diagnosis by a treating source, Elisha McLam, M.D., of left medial knee pain and locking, based on a 2004 MRI report that found, *inter alia*, disruption or absent anterior cruciate ligament and near complete obliteration of the medial meniscus, *see* Record at 730, and (ii) Dr. Trembly made findings indicative of less than a light work capacity, for example, that the plaintiff was able to sit on the examining table for perhaps 20 minutes or more and was able to stand for 20 minutes or half an hour, *see id*. at 506. I deem this argument, which could have been but was not made in the statement of errors, waived. *See, e.g., Farrin v. Barnhart*, No. 05-144-P-H, 2006 WL 549376, at *5 (D. Me. Mar. 6, 2006) (rec. dec., *aff'd* Mar. 28, 2006) ("Counsel for the plaintiff in this case and the Social Security bar generally are hereby placed on notice that in the future, issues or claims not raised in the itemized statement of errors required by this court's Local Rule 16.3(a) will be considered waived and will not be addressed by this court.") (footnote omitted). In any event, as counsel for the commissioner rejoined at oral argument, Dr. Hayes stated that he took the plaintiff's knee pain into account, *see* Record at 302, and it is not clear that Dr. Trembly purported to set forth the maximum amount of time that the plaintiff could sit or stand based on objective findings on examination, *see id*. at 506.

(ii) Dr. Hayes' decision to take the functional effects of obesity into account in crafting his RFC opinion. *See* Statement of Errors at 16-17; Record at 302, 731. The plaintiff reasons that the error is not harmless because it led, in part, to the flawed conclusion that his allegations of incapacitation by chronic pain were not credible. *See* Statement of Errors at 17-18.

"[A]n error at Step 2 is uniformly considered harmless, and thus not to require remand, unless the plaintiff can demonstrate how the error would necessarily change the outcome of the plaintiff's claim." *Bolduc v. Astrue*, Civil No. 09-220-B-W, 2010 WL 276280, at *4 n.3 (D. Me. Jan. 19, 2010). Assuming *arguendo* that the administrative law judge did indeed err in failing to find the plaintiff's obesity severe, the plaintiff falls short of showing that the error necessarily changed the outcome of his claim.

First, as discussed above, the administrative law judge relied in part at Step 5 on vocational expert testimony given in response to a hypothetical question that incorporated all but one of Dr. Hayes' limitations, the need to avoid uneven surfaces. *Compare* Record at 58-59 *with id*. at 297-301; *see also id*. at 16. To the extent that the need to avoid uneven surfaces stemmed from the plaintiff's obesity, such a restriction has no apparent bearing on an individual's capacity to perform the job of bakery worker. *See* DOT § 524.687-022.

Second, the plaintiff merely speculates that the administrative law judge's decision to deem his obesity nonsevere affected her credibility determination. She offered ample reason for discounting his credibility, including that (i) he received little treatment for pain aside from medication, which he reported to be effective, (ii) his participation in outdoor activities and his ability to meet the demands of daily life, including caring for others, was inconsistent with a conclusion that he was chronically incapacitated by pain, (iii) objective testing revealed no

serious pathology, and (iv) on examination, Dr. Harshman found that his back and left knee worked "very well" and saw no reason to consider him medically disabled. *See* Record at 13-14.

The plaintiff contends that the administrative law judge erred, as a matter of law, in discounting his credibility based on his activities of daily living, including his ability to care for his children. *See* Statement of Errors at 18. Yet, while a claimant's activities of daily living, standing alone, do not constitute substantial evidence of a capacity to undertake full-time remunerative employment, *see, e.g., Eaton v. Astrue*, Civil No. 07-188-B-W, 2008 WL 4849327, at *5 (D. Me. Nov. 6, 2008) (rec. dec., *aff'd* December 1, 2008), an administrative law judge properly may take such activities into consideration in assessing the credibility of a claimant's allegations, *see, e.g., Nolan v. Astrue*, Civil No. 09-323-P-H, 2010 WL 2605699, at *7 n.4 (D. Me. June 24, 2010) (rec. dec., *aff'd* July 28, 2010), and in resolving conflicts in the evidence with respect to medical experts' and treating providers' opinions of a claimant's capabilities, *see, e.g., Eaton*, 2008 WL 4849327, at *5. That is precisely what the administrative law judge did here.

The administrative law judge, thus, committed no reversible error in deeming the plaintiff's obesity nonsevere.

### 3. Challenge to Mental RFC Determination

The plaintiff next challenges the administrative law judge's mental RFC determination, arguing that she (i) ignored evidence that he suffered from a severe personality disorder, (ii) concluded, despite uniform expert opinion to the contrary, that he had only mild difficulties in social functioning, and (iii) failed to take into account the effects of stress on his ability to function in the workplace. *See* Statement of Errors at 19-20.

13

Any error is harmless. As counsel for the commissioner observed at oral argument, the administrative law judge ultimately made a mental RFC finding that is largely consistent with those of Drs. Sawyer and Lester, one or both of whom took into account the impairments or restrictions that the plaintiff complains the administrative law judge ignored. *Compare* Finding 5, Record at 11 (plaintiff retained the RFC to understand, remember, and carry out basic one- to three-step instructions throughout a normal workday and workweek with normal breaks on a sustained basis, could not tolerate interaction with the general public, and needed to avoid crowds of more than 100 people) *with id*. at 321 (opinion of Dr. Sawyer that plaintiff capable of understanding and remembering simple tasks, attending to and persisting at simple tasks over the course of a normal workday/workweek, had adequate social skills to interact with co-workers and supervisors but was not suited for work with the public or in public and/or crowded areas, and required a routine with few changes day to day), 503 (opinion of Dr. Lester that plaintiff could understand and remember simple, repetitive tasks and procedures, be reliable and sustain two-hour blocks at simple tasks at a consistent pace over a normal workday/workweek, could not interact with the public but could interact with co-workers and supervisors in a normal work setting, and could adapt to occasional and routine changes); *see also id*. at 315 (finding by Dr. Sawyer of moderate difficulties in maintaining social functioning), 494 (finding by Dr. Lester that plaintiff suffered from personality disorder), 497 (finding by Dr. Lester of moderate difficulties in maintaining social functioning), 503 (finding by Dr. Lester that the plaintiff's cognitive compromises, personality dysfunction, anxiety, and mood instability precluded complex or detailed tasks or interaction with the public).

As the plaintiff notes, the administrative law judge's mental RFC finding diverges from that of Dr. Sawyer in at least one respect: she noted a need to avoid crowds of 100 or more

people, rather than simply to avoid crowds, as Dr. Sawyer had found. *Compare* Finding 5, *id.* at 11 *with id.* at 321. The plaintiff faults the administrative law judge for arbitrarily limiting Dr. Sawyer's finding that he was unsuited for work in crowded areas. *See* Statement of Errors at 19 n.13. This gloss indeed was beyond the administrative law judge's competence as a layperson. Nonetheless, as counsel for the commissioner reasoned at oral argument, the modification has no discernible impact on the plaintiff's ability to perform the job of bakery worker. As he argued, the concept of avoidance of crowds seemingly implicates dealings with the general public, and the administrative law judge had already found that the plaintiff could not tolerate interaction with the general public. *See* Finding 5, Record at 11. In any event, the DOT indicates that people are not a significant component of the job of bakery worker. *See* DOT § 524.687-022.[8]

Finally, to the extent that the plaintiff faults the administrative law judge for failing to take into account the effects of stress, as required by Social Security Ruling 85-15 ("SSR 85-15"), *see* Statement of Errors at 19-20, this court has deemed that requirement satisfied when an administrative law judge assesses the effect of a mental impairment on the ability to understand, carry out, and remember simple instructions; respond appropriately to supervision, co-workers, and customary work situations; and deal with changes in a routine work setting, *see Mason v. Astrue,* Civil No. 08-17-B-W, 2008 WL 4822238, at *4 (D. Me. Nov. 4, 2008) (rec. dec., *aff'd*

---

[8] At oral argument, I observed that the administrative law judge's mental RFC finding diverged from those of Drs. Sawyer and Lester in a second respect: that she omitted any limitation to only occasional and/or routine changes, as Drs. Sawyer and Lester had found. *Compare* Finding 5, Record at 11 *with id.* at 321, 503. Counsel for the commissioner argued that this point was not raised by the plaintiff in his statement of errors and, in any event, did not impact his capacity to perform the bakery worker job, which has a General Educational Development ("GED") reasoning level of 1, requiring a worker to "[a]pply commonsense understanding to carry out simple one- or two-step instructions" and "[d]eal with standardized situations with occasional or no variables in or from these situations encountered on the job." DOT § 524.687-022. The plaintiff's counsel acknowledged that he had not raised this point in his client's statement of errors but argued that the omission could not be harmless error absent vocational expert testimony as to its impact. The commissioner is correct that the plaintiff's failure to raise this point in his statement of errors waives it. *See, e.g., Farrin,* 2006 WL 549376, at *5. In any event, I agree with counsel for the commissioner that the DOT description makes clear that the omission is harmless.

Nov. 25, 2008). The administrative law judge accorded "considerable weight" to the mental RFC opinions of Drs. Sawyer and Lester, both of whom expressly assessed those factors. *See* Record at 15, 321, 503.[9]

Accordingly, I find no reversible error with respect to the administrative law judge's mental RFC finding.

### C. Step 5 Finding of Ability To Do Other Work

The plaintiff's Step 5 point of error hinges on the success of one or more of her challenges to the administrative law judge's RFC determination. *See* Statement of Errors at 20-21. If the court agrees that the plaintiff's RFC arguments fall short, the Step 5 contention fails, as well.

### II. Conclusion

For the foregoing reasons, I recommend that the decision of the commissioner be **AFFIRMED**.

### *NOTICE*

*A party may file objections to those specified portions of a magistrate judge's report or proposed findings or recommended decisions entered pursuant to 28 U.S.C. § 636(b)(1)(B) for which <u>de novo</u> review by the district court is sought, together with a supporting memorandum, within fourteen (14) days after being served with a copy thereof. A responsive memorandum shall be filed within fourteen (14) days after the filing of the objection.*

*Failure to file a timely objection shall constitute a waiver of the right to <u>de novo</u> review by the district court and to appeal the district court's order.*

Dated this 27th day of September, 2011.

/s/ John H. Rich III
John H. Rich III
United States Magistrate Judge

---

[9] SSR 85-15 notes that the mentally impaired "may have difficulty meeting the requirements of even so-called 'low-stress' jobs" and requires that "[a]ny impairment-related limitations created by an individual's response to demands of work . . . must be reflected in the RFC assessment." SSR 85-15, reprinted in *West's Social Security Reporting Service* Rulings 1983-1991, at 349.